IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case Number: 7:24CV00353 |
| ) | |
| JOHN TED GLICK, ) | |
| ) | |
| and ) | |
| ) | |
| JANE CALIFF, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS COUNTS ONE, TWO, FOUR, AND SIX**

Defendants John Ted Glick and Jane Califf ("Defendants") have moved pursuant to Federal Rule 12(b)(6) of Civil Procedure to dismiss Counts One, Two, Four, and Six of the Complaint filed against them by Plaintiff Mountain Valley Pipeline, LLC ("MVP") for failure to state claims upon which relief may be granted. In support of their Motion to Dismiss, Defendants submit the following memorandum.

**I.    Standard of Review**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. To withstand a Rule 12(b)(6) challenge, the complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory assertions that the plaintiff is entitled to relief cannot stand in for specific factual allegations. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). The Court must assume all well-pleaded factual allegations are true and determine whether, viewed in the

light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). The allegations supporting a complaint must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp.*, 127 S. Ct. at 1964-65. These allegations must "raise a right to relief above the speculative level." *Id*. Any "unwarranted inferences, unreasonable conclusions, or arguments" must not be taken into consideration when evaluating whether the plaintiff is plausibly entitled to relief. *E. Shore Markets, Inc. v. J.D. Associates Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000).

II. **Count One Fails to State a Claim Upon Which Relief Can be Granted Because Under Virginia Law There is No Cause of Action for "Interference With Easements" Against a Non-Party to the Easement.**

This Court is well-aware of previous arguments made in cases brought by MVP regarding the inapplicability of the tort of "interference with easements" to allegations of wrongdoing by non-parties to the easement. In the interest of judicial economy, rather than rearguing the matter here, Defendants simply incorporate by reference the arguments previously set forth in *Mountain Valley Pipeline, LLC, v. Ateto, et al.*, Case 7:23CV00809, Southern District of West Virginia, at Dkt. 33, pp. 4-6 and Dkt. 40, pp. 9-10.

Additionally, Defendants respectfully call this Court's attention the following supplemental, persuasive authority from the Northern District of New York on this issue: *Hogan v. Cnty. Of Lewis, N.Y.*, 2015 WL 1400496, at *5-6 (N.D. N.Y. Mar. 26, 2015), *aff'd sub nom. Okudinani v. Rose*, 779 F. App'x 768 (2d Cir. 2019) (granting summary judgment in favor of defendant on interference with easement claim when Plaintiffs "provided no authority that someone other than the servient estate holder may be liable for damages in an interference with easement cause of action").

### III. Count Two Fails to State a Claim for Private Nuisance Because MVP Does Not Allege the Asserted Nuisance Was Visible or Otherwise Capable of Detection From MVP's Easement.

In Count Two, MVP alleges that "[b]y attaching themselves to a structure on Honeysuckle Road, defendants created a substantial and unreasonable interference with MVP's use and enjoyment of its easements" and that this "interference constitutes a private nuisance." (Compl., ¶ 22.)

MVP does not, however, allege that the structure at issue was visible or otherwise capable of physical detection from MVP's easement. This alone is fatal to its private nuisance claim. *See Adams v. Star Enter.*, 51 F. 3d 417, 423 (4th Cir. 1995) ("We find no Virginia case permitting recovery for a private nuisance which is not visible or otherwise capable of physical detection from the plaintiff's property. Thus, to permit a nuisance claim under these facts would extend Virginia nuisance law beyond its current boundaries."); *see also Hinton v. Kroger*, 2019 WL 4060339, *5 (E.D. Va. Apr. 13, 2021) (quoting *Adams*, 51 F. 3d at 423). Even critics of the *Adams* decisions acknowledge that *Adams* "hold[s] that future plaintiffs may not recover for any activity or condition complained of that is not 'physically perceptible' from the plaintiff's property." *In re Tutu Wells Contamination Litigation*, 909 F. Supp. 991, 997 (D. V.I. 1995) (quoting *Adams*, 51 F. 3d at 423).

Under a straightforward application of the holding in *Adams*, Count Two must be dismissed.

### IV. Count Four Fails to State a Claim for Willful and Wanton Conduct/Negligence Because MVP Alleges That Defendants Caused Harm Intentionally, Not Recklessly.

MVP attempts to state a claim against Defendants for Willful and Wanton

3

Conduct/Negligence. *See Infant C. v. Boy Scouts of America, Inc.*, 239 Va. 572, 581 (1990) ("However they may be phrased, the foregoing labels [including "willful or wanton conduct" and "willful or wanton negligence"] all designate tortious conduct of a single species."). MVP fails to do so because it alleges Defendants intentionally, rather than recklessly, caused harm to MVP. *See*, *e.g.*, Compl., ¶ 15 ("Defendants acted willfully, intentionally, and maliciously for the purpose of interfering with MVP's rights and authorized work on the project.").

Virginia law is clear that an allegation of intentionally tortious action – that is, action which intends to cause harm to another – is not properly brought as a claim for Willful and Wanton Conduct/Negligence. *See Infant C.*, 239 Va. at 528 ("An actor guilty of intentional misconduct must intend to cause harm to another. . . . An actor guilty of willful and wanton conduct intends his act, but not the resulting harm."); *see also*, *e.g.*, *Green v. Ingram*, 269 Va. 281, 292 (2005) (same); *Vasterling v. Dirle*, 2023 WL 3727930, *8 (E.D. Va. May 30, 2023) (describing *Infant C.*, *supra*, as "holding the plaintiff boy scout sufficiently stated a claim for willful and wanton conduct, *as opposed to intentional conduct*, where he pleaded that the scoutmaster did not intend to cause harm") (emphasis added).

MVP attempts to fit a square peg in a round hole in asserting what is essentially an aggravated negligence claim based on factual allegations of intentional harm. MVP has not pleaded in the alternative that Defendants intended their actions but not the resulting harm to MVP – in fact, the allegation of intentional harm is incorporated by referenced into Count Four. (Compl., ¶¶ 15, 29.)

MVP cannot, as a matter of current Virginia state law, state a claim for Wanton and

4

Willful Conduct/Negligence against Defendants based on factual allegations of intentionally causing harm. This Court should not expand Virginia law to allow such a claim here. *See Fontenot v. Taser Intern. Inc.*, 736 F. 3d 318, 331 (2013) (citing *Time Warner Entm't-Advanced/Newhouse P'ship v. Carteret-Craven Elc. Membership Corp.* 506 F. 3d 304, 314-15 (4th Cir. 2007) and *Burris Chem., Inc. v. USX Corp.*, 10 F. 3d 243, 247 (4th Cir. 1993)) ("[W]e have declined to expand state common law principles to encompass novel circumstances when the courts of that state have not done so first."); *Moore v. Equitrans, L.P.*, 27 F. 4th 211, 219-22 (4th Cir. 2022) ("It is not the role of this Court to dramatically expand West Virginia's public policy . . . without clear direction from its appellate courts[.]").

Count Four must be dismissed.

**V.    Count Six Fails to State a Claim Upon Which Relief Can be Granted Because § 18.2-499 is Unconstitutionally Vague, Both On Its Face and as Applied to Glick and Califf.**

a. Legal Authority

"In our constitutional order, a vague law is no law at all." *United States v. Davis*, 588 U.S. 445, 447 (2019). *See also id.* at 451 ("Vague laws contravene the 'first essential of due process of law' that statutes must give people 'of common intelligence' fair notice of what the law demands of them."); *Sessions v. Dimaya*, 584 U.S. 148, 175 (Gorsuch, J., concurring) ("Vague laws invite arbitrary power. . . . Perhaps the most basic of due process's customary protections is the demand of fair notice. . . . Without an assurance that the laws supply fair notice, so much else of the Constitution risks only a 'parchment barrie[r] against arbitrary power.'") (Quoting The Federalist No. 48, p. 308 (C. Rossiter ed. 1961) (J. Madison)). The "doctrine prohibiting the enforcement of vague laws rests

5

on the twin constitutional pillars of due process and separation of powers." *Davis*, 588 U.S. at 451. Accordingly, "[w]hen Congress passes a vague law, the role of courts under our Constitution is not to fashion a new, clearer law to take its place, but to treat the law as a nullity and invite Congress to try again." *Id.* at 448.

The vagueness doctrine "addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Little v. Dominion Transmission, Inc.*, 138 F. Supp. 3d 699, 704-05 (W.D. Va. 2015) (quoting *Fox Television Stations*, 567 U.S. 239, 253 (2012)). A law that does not "provid[e] an 'ascertainable standard' for compliance" may be deemed unconstitutionally vague. *United States v. Waggoner*, 2022 WL 1153472, at *3 (W.D. Va. Apr. 19, 2022). Further, the Supreme Court has clarified that its "*holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *Johnson v. United* States, 576 U.S. 591 (2015).

The vagueness doctrine applies strictly in the criminal and quasi-criminal contexts. See, *e.g.*, *Manning v. Caldwell*, 930 F. 3d 264, 272-73 (4th Cir. 2019) (striking down Virginia's "quasi-criminal" statutory scheme for "habitual drunkards" as void-for-vagueness, and observing that "if criminal penalties may be imposed for violations of a law, a stricter standard is applied in reviewing the statute for vagueness").

As this Court has acknowledged, the vagueness doctrine applies particularly stringently to "statutes that 'threaten [ ] to inhibit the exercise of constitutionally protected rights' – in particular, 'the right of free speech or association.'" *Little*, 138 F.

6

Supp. 3d at 705 (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 499 (1982)). *See also, e.g., Carolina Youth Action Project; D.S. by & through Ford v. Wilson*, 60 F. 4th 770, 781-82 (4th Cir. 2023) (quoting *Hynes v. Mayor & Council of Oradell*, 425 U.S. 610, 620 (1976) (the "test of vagueness applies with particular force in review of laws dealing with speech"); *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 618-19 (2021):

> When it comes to the freedom of association, the protections of the First Amendment are triggered not only by actual restrictions on an individual's ability to join with others to further shared goals. The risk of a chilling effect on association is enough, "[b]ecause First Amendment freedoms need breathing space to survive." [*NAACP v. Button*, 371 U.S. 415, 433 (1963)].

Accordingly, while some authorities still hold that a defendant ordinarily must demonstrate vagueness as-applied to prevail in a vagueness challenge,[1] a defendant may bring a facial vagueness or overbreadth challenge to a statute implicating First Amendment activity. *See, e.g., Coates v. City of Cincinnati*, 402 U.S. 611, 619-20 (1971).

    b. § <u>18.2-499 is void for vagueness on its face.</u>

        i. *The plain text of § 18.2-499 contains no clearly ascertainable standard upon which an ordinary person can distinguish prohibited activity from activity protected by the First Amendment.*

§ 18.2.-499 states, in relevant part:

> Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business, or profession by any means whatever or (ii) willfully and maliciously . . . preventing or hindering another from doing or performing any lawful act, shall be jointly and severally guilty of a Class 1 misdemeanor.

---

1 Defendants suggest that this requirement is inconsistent with *Davis, supra*, but acknowledge that the Fourth Circuit has found otherwise in *United States v. Hasson*, 26 F. 4th 610 (4th Cir. 2022).

The act of associating with others "for the purpose of willfully . . . injuring another in his reputation, trade, business, or profession *by any means whatever*" (emphasis added) includes, on its face, a wide variety of speech, expression, and associational acts. Actions covered could include boycotts, pickets, social media and other public relations campaigns, and even court actions and appeals to the legislature if such acts sought to harm the reputation of a business or change its operation in ways that reduce its profits. A single word – "maliciously" – is what purports to transform what would otherwise be core First Amendment-protected activity into a criminal act punishable by incarceration (in addition to civil liability with treble damages). As such, the vagueness doctrine applies strictly and in full force to the word "maliciously" – which, to save the statute, must provide a clearly defined and ascertainable standard upon which an ordinary person can distinguish legal and illegal activity.

What would a person of common intelligence understand "maliciously" to mean here? Perhaps they would understand it as the United States Supreme Court understood it interpreting a nearly identical Wisconsin statute: "We interpret 'maliciously injuring' to import doing a harm malevolently, for the sake of the harm as an end in itself, and not merely as means to some further end legitimately desired." *Aikens v. State of Wisconsin*, 195 U.S. 194, 203 (1904). Perhaps they would understand it as the Virginia Supreme Court previously understood it when interpreting § 18.2-499: to imply a "primary and overriding purpose" to injure the victim, notwithstanding additional motives. *Greenspan v. Osheroff*, 232 Va. 388, 388-39 (Va. 1986). Alternatively, they might understand it as the Virginia Supreme Court understands it now – although this

8

seems less intuitive than the other understandings: to require that a defendant act "with legal malice, i.e., 'intentionally, purposely, and without lawful justification.'" *Dunlap v. Cottman Transmission Systems, LLC* 287 Va. 207, 215 (2014) (*quoting Commercial Bus. Sys., Inc. v. BellSouth Servs.*, 249 Va. 39, 47 (1995)). They also could read it in some other way entirely. But whatever the person of common intelligence's understanding, it cannot be said to be "clearly ascertainable" from the text of the statute itself.2

> ii. *The "legal malice" standard adopted by Virginia courts does not rescue § 18.2-499 from its constitutional infirmities.*

A plain text reading of § 18.2-499 fails to provide persons of ordinary intelligence a clearly defined standard by which they can determine when their otherwise First Amendment-protected conduct crosses the line to criminal activity. In light of *Davis*, this should be the end of the vagueness inquiry. *Davis* clarifies that "[i]n our constitutional order, a vague law is no law at all" and that when it comes to vague law, the role of courts is to "treat the law as nullity" rather than taking on the quintessentially legislative task of functionally rewriting the statute. 584 U.S. at 447-48. This directive is grounded in both due process and separation of powers concerns, as "hand[ing] off the legislature's responsibility for defining criminal behavior to unelected prosecutors and judges [leaves] people with no sure way to know what consequences will attach to their conduct." *Id.* at 448.

---

2 The same analysis applies with full force to MVP's claim under § 18.2-499(A)(ii). Independently, this theory of liability fails because there is no factual allegation in the Complaint sufficient to sustain the allegation that Defendants conspired to "prevent[ ] or hinder[ ] *MVP* from doing or performing lawful work." (Compl., ¶ 50) (emphasis added). MVP does not allege in its Complaint that the workers who were delayed by the blockade were employed by MVP, and MVP lacks standing to assert a claim on behalf of a subcontractor purportedly prevented or hindered from doing lawful work.

Defendants acknowledge that courts have been permitted to "examine both the statute itself and any limiting constructions from state courts or agencies" to determine if a statute is vague. *Capital Assoc. Indus., Inc. v. Stein*, 922 F. 3d 198, 210 (4th Cir. 2019) (*citing Martin v. Lloyd*, 700 F. 3d 132, 136 (4th Cir. 2012); *see also*, *e.g.*, *Manning*, 930 F. 3d at 274 (*citing Capital Assoc. Indus, Inc.*, *supra* and *Hoffman*, 455 U.S. at 494 n. 5). But no Fourth Circuit opinion has considered *Davis* in examining the continued viability of this practice. Defendants nonetheless assume that MVP will argue that the modern construction of § 18.2-499 requiring "legal malice" cures the constitutional vagueness defect presented by the statute itself. This argument fails – for numerous reasons.

First, to the extent it might be reasonable in other cases to rely upon judicial interpretations for a clearly ascertainable standard of conduct rather than the statute itself, it is not reasonable to do so here. Virginia courts have adopted multiple, conflicting interpretations of what "malicious" means under § 18.2-499. While a reasonably competent attorney will surely know that "legal malice" is the currently controlling standard, an intelligent person who lacks a legal education could hardly be faulted for relying on the line of authorities stemming from *Greenspan*, 232 Va. at 388-39, which set forth an "actual malice" standard as follows:

> We hold . . . that when the fact-finder is satisfied from the evidence that the defendant's primary and overriding purpose is to injure his victim in his reputation, trade, business, or profession, motivated by hatred, spite, or ill-will, the element of malice required by Code § 18.2-499 is established, notwithstanding any additional motives entertained by the defendant to benefit himself or persons other than the victim.

The "actual malice" standard set forth in *Greenspan* is both broader and narrower than

the subsequently-adopted "legal malice" test – broader in that it omits the requirement that an action be taken "without legal justification[,]" but narrower in that it imposes the requirement of a "primary and overriding purpose . . . to injure [the] victim . . . motivated by hatred, spite, or ill-will[.]" *See id.* A person of ordinary intelligence who does not have a Westlaw account and has never been trained in Shepherdizing, if expected to turn to case law in lieu of simply reading § 18.2-499 to determine its meaning, might reasonably rely on *Greenspan* or its progeny. Indeed, some courts have continued to cite *Greenspan* favorably even following the Virginia Supreme Court's adoption of the legal malice standard in 1995. *See CBS v. BellSouth Services, Inc.*, 453 S.E.2d 261 (Va. 1995) (adopting legal malice standard in lieu of actual malice standard); *Bumgarner v. Fischer*, 101 Va. Cir. 65, 2019 WL 4734428, *2 (City of Richmond 2019) (invoking the "primary and overriding purpose" test set forth in *Greenspan* above, although labeling it "legal malice"); *Poco Loco, LLC v. Barnes*, 72 Va. Cir. 165, 2006 WL 3158107, *3 (Fairfax County 2006) (invoking *Greenspan*'s "primary and overriding purpose" test).3

  Second, even imputing knowledge of the legal malice standard to a person of common intelligence, § 18.2-499 still fails to provide a sufficient standard for distinguishing permitted and unpermitted conduct when applying the heightened scrutiny required in the case of criminal statutes, especially those that implicate core

---

3 Nor could a person of common intelligence be faulted for lacking confidence that § 18.2-499 will be consistently construed going forward, given the Virginia Supreme Court's inconsistent approaches to defining malice under this statute, in combination with the increasingly common and high-profile practice of newly constituted courts departing from previously settled legal tests and principles. *See, e.g.*, *Loper Bright Enterprises v. Raimondo*, 603 U.S. ____(2024); *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022).

First Amendment rights. In civil cases, Virginia courts have construed § 18.2-499 to require "an unlawful act or an unlawful purpose" and "an act that is itself wrongful *or tortious*." *Dunlap*, 287 Va. at 215 (emphasis added, internal quotations omitted). And while a civil suit alleging a violation of § 18.2-499 requires damage to the plaintiff, *id.*,4 in the criminal context, "there is no need to prove that the conspiracy led to an injury[.]" *Gelber v. Glock*, 293 Va. 497, 534 (2017) (quoting *Beck v. Prupis*, 162 F. 3d 1090, 1099 n. 18 (11th Cir. 1998), *aff'd*, 529 U.S. 494, 501-03 (citing Wayne R. LaFave & Austin W. Scott Jr., Criminal Law § 6.4(d) (2d. ed. 1986))). Thus, applying the legal malice standard, § 18.2-499 criminalizes any association for the purpose of engaging in any kind of tortious activity to injure another's reputation, trade, business, or profession – regardless of whether the association results in any action to that end, and regardless of whether the tortious activity is otherwise proscribed by criminal law.

Assuming *arguendo* that the precision and scope of § 18.2-499 would be constitutionally tolerable if it carried civil penalties only, it is intolerable as a criminal statute. As this Court has noted, "[t]he degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment[,]" and laws carrying civil penalties are "subject to a less strict test" than criminal laws. *Little*, 138 F. Supp. 3d at 705 (internal quotations omitted). By defining a criminal law violation with reference to tortious activity generally, the "legal malice" construction necessarily renders § 18.2-499, a criminal statute, impermissibly vague.

Third, by tethering the definition of criminal conduct to tortious activity, the

---

4 *See* § 18.2-500(A) (creating a cause of action for "[a]ny person who shall be injured in his reputation, trade, business, or profession by a violation of § 18.2-499).

12

"legal malice" construction renders § 18.2-499 facially overbroad, as there are categories of speech acts that may be tortious in nature but for which punitive liability cannot be imposed. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347-50 (1974); *see also Steele v. Goodman*, 382 F. Supp. 3d 403 (E.D. Va. 2019) (recognizing a common-law defamation claim as a legitimate predicate for liability under § 18.2-499).

Fourth, adoption of the "legal malice" standard in and of itself renders the statute unconstitutional because it expands the reach of § 18.2-499 to encompass action undertaken without "actual malice" – which a person of ordinary intelligence would reasonably assume is required by a statute proscribing malicious behavior. Even if the legal malice standard rescued the statute from its First Amendment problems, which it does not, *Davis* reaffirmed that expanding the reach of a criminal statute as a method of constitutional avoidance is inconsistent with the principles of due process and fair notice. *See* 588 U.S. at 464-65.

At bottom, the modern "legal malice" construction adopted by Virginia courts cannot rescue § 18.2-499 from its fundamental constitutional infirmity: it fails to provide a sufficiently ascertainable standard to enable persons of ordinary intelligence to assess whether their actions, including core First Amendment activity in some cases, fall within the reach of the statute. Count Six must be dismissed because § 18.2-499 is void-for-vagueness on its face.

    c. <u>§ 18.2-499 is void-for-vagueness as applied to Defendants Glick and Califf.</u>

Because § 18.2-499 is void in such a manner as to create a chilling effect on the exercise of First Amendment freedoms, this Court can simply find the statute unconstitutional on its face without proceeding to an as-applied analysis.

13

But even if § 18.2-499 were not void on its face, it is unconstitutional as applied to those prosecuted and sued for principled acts of nonviolent civil disobedience in the tradition of Gandhi and Martin Luther King, Jr.

Of course, it is this Court's role here to apply the law faithfully, not to weigh in on the righteousness of Mr. Glick and Ms. Califf's cause. There are consequences for engaging in civil disobedience. Mr. Glick and Ms. Califf have willingly and forthrightly faced those consequences in Virginia's criminal court system. They now face further consequences in the form of a civil proceeding that may proceed as to any cause of action for which this Court finds that MVP has stated a claim for relief. But these consequences must not be based on an expansive application of a criminal statute of which Mr. Glick and Ms. Califf lacked fair notice.

Simply put, nonviolent protest is not "malicious" in any common understanding of the word. An ordinary English speaker would not describe senior citizens like Mr. Glick and Ms. Califf as acting "maliciously" for putting their bodies on the line in opposition to what they believe in good faith to be an environmentally disastrous project.5 At the very least, unlike other statutes lodged against Mr. Glick and Ms. Califf in the related criminal case, it is not at all clear from the text of § 18.2-499 that engaging

---

5 This belief is not unreasonable. *See, e.g.*, https://www.coalvalleynews.com/news/mountain-valley-pipeline-had-another-rupture-amid-more-environmental-issues/article_527606cd-7fa5-52a8-b42f-e7d6dbf99a8f.html (accessed July 6, 2024) (discussing June 4 pipe rupture in Elliston); https://www.wdbj7.com/2024/05/02/homeowner-concerned-after-neighbor-finds-muddy-water-property/ (accessed July 6, 2024) (discussing residents' environmental and safety concerns following failed hydrostatic test on MVP on Bent Mountain on May 1); https://mcclellan.house.gov/sites/evo-subsites/mcclellan.house.gov/files/evo-media-document/23-1592_members-of-congress-amicus-brief-in-support-of-petitioner-as-filed.pdf (accessed July 6, 2024) (amicus brief of five Virginia congressional representatives voicing concerns about the impact of the Mountain Valley Pipeline on environment as well as the property rights of Virginia residents); *Sierra Club v. WV DEP*, 64 F. 4th 487 (4th Cir. 2023).

14

in acts of nonviolent protest in defense of land and water falls within the statute's reach.

§ 18.2-499 does not clearly proscribe the activity for which Mr. Glick and Ms. Califf stand accused. Even if this Court finds that § 18.2-499 is valid on its face, Court Six must nonetheless be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant the Defendants' Motion to Dismiss and dismiss the Complaint against them with prejudice as to Counts I, II, V, and XI.

JOHN TED GLICK AND JANE CALIFF

By: /s/Paul G. Beers
     Of Counsel

Jonathan Sidney, *Pro Hac Vice*
Colorado Bar No. 52463
Ohio Bar No. 0100561
Climate Defense Project
P.O. Box 97
Forest Hill, WV
Email: jsidney@climatedefenseproject.org
Telephone: (510) 318-1549

Paul G. Beers (VSB # 26725)
Glenn, Feldmann, Darby & Goodlatte
111 Franklin Road, S.E., Suite 200
P. O. Box 2887
Roanoke, Virginia 24001-2887
Telephone: (540) 224-8000
Facsimile: (540) 224-8050
Email: pbeers@glennfeldmann.com

Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2024, I electronically filed the foregoing Memorandum in Support of Defendants' Motion to Dismiss Counts One, Two, Four, and Six with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

                                            /s/ Paul G. Beers
                                            Paul G. Beers