IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MOUNTAIN VALLEY PIPELINE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 7:24CV00353 |
| | ) | |
| JOHN TED GLICK, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JANE CALIFF, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS COUNTS ONE, TWO, FOUR, AND SIX**

Now come Defendants John Ted Glick and Jane Califf ("Defendants), and reply to Mountain Valley Pipeline, LLC's ("MVP") Memorandum in Opposition to their Motion to Dismiss.[1]

## I. REPLY IN SUPPORT OF MOTION TO DISMISS COUNT ONE

Easements, like leases and rental agreements, create property rights that are entitled to protection, as well as contractual obligations upon the parties to an easement. But Virginia state law does not recognize a freestanding tort for "interference with easements" against a third-party – just as leases and rental agreements do not create freestanding torts for "interference with leases" and "interference with rental agreements." Instead, in Virginia, an easement holder may

[1] Defendants stand by all grounds advanced in their previous Memorandum in Support of Defendants' Motion to Dismiss Counts One, Two, Four and Six, Dkt. 12 ("Memo in Support of Motion to Dismiss") and do not waive any such grounds by not repeating them herein.

vindicate its property interests against third parties through established causes of actions as appropriate under state law – for example, nuisance.

MVP does not cite a single Virginia case (other than this Court's previous ruling in *MVP v. Guidry*) recognizing a cause of action for interference with easements against a third-party to the easement.[2] *See Snead v. C & S Props. Holding Co.*, 692 S.E.2d 212 (Va. 2010) (granting injunctive relief in dispute between dominant and servient estates; allegation of "Tortious Interference with and Obstruction of Easement" had been nonsuited in lower court, *see id.* at 213 n. 3); *Pizzarelle v. Dempsey*, 526 S.E.2d 260, 266 (Va. 2000) (similarly granting injunctive relief in dispute between dominant and servient estates); *Columbia Gas Transmission, LLC v. Grove Ave. Developers, Inc.*, 357 F. Supp. 3d 506, 528 (E.D. Va. 2019) (declaratory judgment action arising from dispute between parties to easement).[3]

Respectfully, as a federal court sitting in diversity, this Court should not expand Virginia law to allow such a claim here. *See Fontenot v. Taser Intern. Inc.*, 736 F. 3d 318, 331 (2013) (citing *Time Warner Entm't-Advanced/Newhouse P'ship v. Carteret-Craven Elc. Membership Corp.* 506 F. 3d 304, 314-15 (4th Cir. 2007) and *Burris Chem., Inc. v. USX Corp.*, 10 F. 3d 243, 247 (4th Cir. 1993)); *Moore v. Equitrans, L.P.*, 27 F. 4th 211, 219-22 (4th Cir. 2022). Count One must be dismissed.

[2] The undersigned acknowledge that a Circuit Court judge in Montgomery County (Case No. CL23001242-00) has permitted MVP to proceed with "interference with easements" claims against third-party protesters, although the Circuit Court has not yet issued an opinion on this issue outlining its rationale as to why it believes the claims are cognizable under Virginia law.

[3] The majority of out-of-state authority MVP cites similarly does not involve actions against third-party interference.

## II. **<u>REPLY IN SUPPORT OF MOTION TO DISMISS COUNT TWO</u>**

That MVP has standing (at least at this Rule 12 juncture) to pursue a claim for public nuisance does not automatically give MVP a cause of action for private nuisance. MVP asserts that "[u]nder Virginia law, the only difference between a public and private nuisance is that any party sustaining special damage can file suit for a public nuisance, while only the owner or occupant of property impacted by the nuisance can bring suit for a private nuisance." <u>Plaintiff's Response to Defendants' Motion to Dismiss Counts One, Two, Four, and Six</u> ("<u>Response Brief</u>") Dkt. 15, p. 7. This is incorrect, as MVP's own authorities make clear. *See Kraige v. Kroger Co.*, 43 Va. Cir. 293, 1997 WL 33616174, *1 (1997) ("Nuisance is a generic term covering *two separate and distinct torts*, they being a private nuisance and a public nuisance.") (emphasis added); *City of Virginia Beach v. Murphy*, 239 Va. 353, 355-36 (1990) (acknowledging "distinction between a public and private nuisance" and that public and private nuisances "are of two kinds") (internal quotations omitted). A plaintiff alleging special injury as the result of a public nuisance is not automatically entitled to bring a claim for private nuisance as well.

MVP's private nuisance claim is foreclosed by *Adams v. Star Enter.*, 51 F. 3d 417 (4th Cir. 1995). MVP attempts to distinguish the factual circumstances at issue here. But *Adams* says what it says: "We find no Virginia case permitting recovery for a private nuisance which is not visible or otherwise capable of physical detection from the plaintiff's property." *Id.* at 423.[4] This was the essential rationale upon which the Fourth Circuit declined to permit the nuisance claim in *Adams* to proceed. *Id.* Nowhere in *Adams*, nor *Cavallo v. Star Enterprise,* 100 F. 3d 1150 (4th Cir. 1996), nor *Ogden v. Star Enter.,* 70 F. 3d 1262 (4th Cir. 1995) (unpublished) does the Fourth Circuit state

[4] This is consistent with *Fugate v. Carter*, 151 Va. 108, 114 (1928), where the garage at issue "immediately adjoin[ed] the plaintiff's lot[.]"

that the *Adams* holding is limited solely to cases involving environmental contamination or to "activities or conditions on neighboring property." *See* Response Brief, p. 8; *Cavallo*, 100 F. 3d at 1154 (distinguishing private nuisance claims from those at issue in *Adams* by noting the nuisance in *Cavallo* was "physically perceptible" from *Cavallo* plaintiffs' property); *Ogden*, 70 F. 3d 1262.

Perhaps the *Adams* court was unwise to impose a "physically perceptible" requirement on future private nuisance claims, but it chose to do so. *See In re Tutu Wells Contamination Litigation*, 909 F. Supp. 991, 997 (D. V.I. 1995) (quoting *Adams*, 51 F. 3d at 423). Count Two is governed by *Adams* and must be dismissed.

## III. **REPLY IN SUPPORT OF MOTION TO DISMISS COUNT FOUR**

*Infant C. v. Boy Scouts of America, Inc.*, 239 Va. 572 (1990) clarifies that Willful and Wanton Conduct/Negligence is not an appropriate cause of action when a plaintiff alleges that a defendant has intentionally caused harm. In *Infant C.*, the defendant scoutmaster "moved to strike on the ground that the plaintiff's proof had established an intentional tort, never alleged in the pleading." *Id.* at 582. After citing the *Restatement* distinguishing reckless and intentional conduct (referenced in MVP's response brief), the Court wrote:

> To the extent the term "willful and intentional wrong" served to distinguish gross negligence from a tortious act intended by the actor, it was sufficiently precise. *But the gross negligence cases did not require that any distinction be made between an intentional act done without intending harm, on one hand, and an intentional act done with intent to harm, on the other. Resolution of the issue presented by the present case requires articulation of the difference, and we now make that distinction in accordance with the comment to the Restatement, quoted above.*
>
> When the evidence in the present case is analyzed in light of the foregoing distinction, it falls short of showing any intention by Bittenbender to cause harm to Infant C. Instead, his motivation may be characterized, in the most unfavorable light, as deliberate self-gratification with a total disregard of the consequences to his victims. . . .
>
> We conclude that the plaintiff, in Count IV, alleged willful and wanton misconduct on Bittenbender's part, and that the proof at trial conformed to those allegations.

239 Va. at 583-84 (emphasis added).

If the tort of Willful and Wanton Conduct could properly be stated based upon an allegation of intentionally causing harm, there would have been no need for the Court to engage in this analysis and make a "distinction . . . between an intentional act done without intending harm, on one hand, and an intentional act done with intent to harm, on the other." *Id.* at 583. But the Court did so, clarifying that the tort of Willful and Wanton Conduct/Negligence is appropriate when "the actor does not intend to cause the harm which results from it." *Id.* at 582 (quoting *Restatement* (Second) *of Torts* § 500, cmt. f (1965)). MVP has specifically pleaded as a factual matter that Defendants intended to cause harm to MVP, and therefore has not coherently pleaded a claim for Willful and Wanton Conduct. Count Four must be dismissed.

## IV. **REPLY IN SUPPORT OF MOTION TO DISMISS COUNT SIX**

### A. THE VIRGINIA SUPREME COURT'S REDEFINITION OF § 18.2-499 TO EXPAND ITS REACH BEYOND "MALICIOUS" CONDUCT UNDER AN EVERYDAY MEANING OF THE WORD OFFENDS THE PRINCIPLES UNDERLYING THE VAGUENESS DOCTRINE.

In its Response to Defendants' Motion to Dismiss, MVP fails to acknowledge – let alone rebut – two critical issues at the heart of Defendants' constitutional challenge. First, MVP does not explain how a person of ordinary intelligence can be expected to understand what "maliciously" means in the context of § 18.2-499. *See* Memo in Support of Motion to Dismiss, pp. 8-9; *United States v. Delaney*, 717 F. 3d 553, 556 (7th Cir. 2013) ("the word 'malice' has no consistent meaning in law"); *Matheny v. United States*, 469 F. 3d 1093, 1097 (7th Cir. 2006) ("Unfortunately, the word 'malice' does not have a settled meaning in law. Sometimes it means ill will, hatred, 'evil design,' or, in short, 'malice' in its everyday sense."). Unlike statutes such

as 18 U.S.C. § 922(g)(3) (criminalizing possession of firearms by anyone "who is an unlawful user of or addicted to any controlled substance"), which have survived facial vagueness challenges, there is no "unmistakable core" of § 18.2-499. *See United States v. Hasson*, 26 F. 4th 610, 612 (4th Cir. 2022); *id.* at 618 (quoting *Sessions v. Dimaya*, 584 U.S. 148, 138 S. Ct. 1204, 1252 (2018) (Thomas, J., dissenting)); *United States v. Williams*, 553 U.S. 285, 306 (2008) ("What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is.").

Second, while relying heavily on the "limiting construction" first set forth in *Com. Bus. Sys., Inc. v. Bellsouth Servs., Inc.*, 453 S.E.2d 261, 267 (Va. 1995), MVP fails to address Defendants' argument that the Virginia Supreme Court's adoption of the legal malice standard itself renders § 18.2-499 vague because this construction *expands* the statute's reach beyond the ordinary understanding of "malicious" activity.[5] Under an everyday, common-sense understanding, "unlawful" activity is not, *per se*, "malicious" activity. The legal malice standard broadens the scope of § 18.2-499 to proscribe conduct that is commonly understood by people of ordinary intelligence as *unlawful* – but not *malicious*. *See* Memo in Support of Motion to Dismiss, pp. 13-15; *Matheny*, 469 F. 3d at 1097.

MVP suggests that the "legal malice" construction avoids the constitutional problem identified by Defendants. But this construction expands the scope of § 18.2-499 to allow for a finding of guilt or liability in the absence of any "malice" as the term might most naturally be understood "in its everyday sense" – i.e., suggesting ill will, hatred, or evil design. *Matheny*, 469

[5] Nor does MVP address the fact that the Virginia Supreme Court has adopted conflicting constructions of "malice" at different times, and that Virginia trial courts have confused this issue subsequent to *Com. Bus. Sys*. *See* Memo in Support of Motion to Dismiss, pp. 10-11.

F. 3d at 1097; *see also Aikens v. State of Wisconsin*, 195 U.S. 194, 203 (1904) ("We interpret 'maliciously injuring' to import doing a harm malevolently, for the sake of the harm as an end in itself, and not merely as means to some further end legitimately desired."). The effect of this so-called "limiting construction" is to "offend[ ] the very same due process and separation-of-powers principles on which the vagueness doctrine itself rests." *United States v. Davis*, 588 U.S. 445, 464 (2019); *see also id.* at 465 n. 8 (disfavoring invocation of "constitutional avoidance to construe [a] statute to punish conduct that it does not unambiguously proscribe" – even when the avoidant construction would be more lenient for some defendants); *United States v. Simms*, 914 F. 3d 229, 257-58 (4th Cir. 2019) (en banc) (Wynn, J., concurring)[6] ("interpret[ing] a statute's breadth in a manner that extends beyond what the text 'clearly warrants' . . . would violate the due process principle of 'fair warning' undergirding the rule of lenity"). MVP cites no authority suggesting that courts can cure the constitutional problem of insufficient notice by redefining a statute to encompass conduct that is not clearly proscribed by its plain language.

MVP asserts that "[b]ecause the Supreme Court of Virginia has construed § 18.2-499 as applying only to unlawful conduct, defendants cannot show it is unconstitutionally vague on its face." *See* Response Brief, p. 12. But due process requires "fair notice not only of the conduct that will subject [one] to punishment, but also of the severity of the penalty that a State may impose." *United States v. Under Seal*, 819 F. 3d 715, 726 (4th Cir. 2016) (quoting *BMV of N. Am. V. Gore*, 517 U.S. 559, 574 (1996)). Accordingly, the fact that § 18.2-499 has been construed by the Virginia Supreme Court to proscribe *otherwise* unlawful conduct does not mean that it sets forth a sufficiently ascertainable standard of conduct to survive a vagueness challenge

[6] Judge Wynn's concurrence in *Simms* was cited favorably in the *Davis* majority opinion. *See* 588 U.S. at 463.

– particularly where the otherwise unlawful conduct can be merely tortious and not independently criminal in nature. *See* Memo in Support of Motion to Dismiss, pp. 11-13.

B. § 18.2-499 IS SUBJECT TO A HEIGHTENED VAGUENESS STANDARD BECAUSE IT IS A CRIMINAL STATUTE AND IS QUASI-CRIMINAL EVEN IN A PURELY CIVIL PROCEEDING.

MVP asserts that this Court's review of § 18.2-499 is subject to a more lenient vagueness test because this is a civil proceeding.[7] MVP is incorrect for two reasons.

First, while "[l]ess clarity is required in *purely* civil statutes . . . if criminal penalties *may* be imposed for violations of a law, a stricter standard is applied in reviewing the statute for vagueness." *Manning v. Caldwell*, 930 F. 3d 264, 272 (4th Cir. 2019) (en banc) (emphasis added); *see also H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 255 (1989) (Scalia, J., concurring)[8] (a statute that "has criminal applications as well, must, even in its civil applications, possess the degree of certainty required for criminal laws").

Second, even if § 18.2-499 were not explicitly a criminal statute, the treble damages provision set forth in § 18.2-500(A) independently renders the statute quasi-criminal in nature and justifies a stricter standard of review for vagueness. *See Cooper Industries, Inc. v. Leatherman Tool Grp, Inc.*, 532 U.S. 424, 432 (2001) (distinguishing compensatory damages from "quasi-criminal" punitive damages "operat[ing] as 'private fines' intended to punish the defendant and to deter future wrongdoing" and as a form of "moral condemnation"); *United*

[7] Justice Gorsuch has questioned the continuing vitality of this distinction and suggested that the vagueness doctrine may apply with full force in any case affecting a person's life, liberty, or property, regardless of its classification as a civil case. *See Dimaya*, 584 U.S. 177-188 (Gorsuch, J., concurring). Because § 18.2-499 is quasi-criminal in nature, that question need not be addressed here.

[8] Justice Scalia's concurrence in *H.J. Inc.* was joined by three other members of the Court; the majority did not address the vagueness issue.

*States ex rel. Grant v. United Airlines, Inc.*, 912 F. 3d 190, 197 (4th Cir. 2018) (applying pleading requirement with "special force" to FCA claims in light of their "quasi-criminal nature" given the potential for treble damages, a "punishment which carries potentially crippling consequences"); *Manning*, 903 F.3d at 273 ("[E]ven laws that nominally impose only civil consequences warrant a 'relatively strict test' for vagueness if the law is 'quasi-criminal' and has a stigmatizing effect.").

C. § 18.2-499 IS SUBJECT TO A HEIGHTENED VAGUENESS STANDARD BECAUSE IT THREATENS TO INHIBIT THE CONSTITUTIONALLY PROTECTED RIGHTS OF FREE SPEECH AND ASSOCIATION.

With respect to whether a stricter vagueness standard applies based on the First Amendment concerns implicated here, MVP's response again misses the mark. *See generally* Memo in Support of Motion to Dismiss, pp. 6-7. The vagueness doctrine applies more stringently to "statutes that 'threaten [ ] to inhibit the exercise of constitutionally protected rights' – in particular, 'the right of free speech or association.'" *Little v. Dominion Transmission, Inc.*, 138 F. Supp. 3d 699, 705 (W.D. Va. 2015) (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498, 499 (1982)). This is true regardless of whether any particular defendant's alleged conduct is afforded First Amendment protection *per* se. *See Gooding v. Wilson*, 405 U.S. 518, 521 (1972) (quoting Coates *v. City of Cincinnati*, 402 U.S. 611, 619-20 (1971) (opinion of White, J.)) ("Although a statute may be neither vague, overbroad, nor otherwise invalid as applied to the conduct charged against a particular defendant, he is permitted to raise its vagueness or unconstitutional overbreadth as applied to others.").

That Defendants are accused of illegal activity does not mean that the First Amendment has nothing to say about the allegations in this case. MVP's Complaint characterizes speech and expressive conduct as part of the so-called "conspiracy" and seeks injunctive relief in the form of

a prior restraint on Defendants' right to engage in First Amendment protected activity. *See* Compl., ¶¶ 41-42 (alleging in conspiracy count that Defendants and other protesters arranged for signs promoting the protest and arranged for pictures of the protest to be posted on social media with messages praising the protest); *id.* at Prayer (1)(d) (seeking to enjoin defendants from "encouraging[ ] or promoting" acts of civil disobedience interfering with MVP's easements or the work of its contractors); *Marfork Coal Co. v. Smith*, 274 F.R.D. 193, 205 (S.D. W. Va. Mar. 17, 2011) (internal quotations omitted) ("Peaceful speech, even speech that urges civil disobedience, is fully protected by the First Amendment."); *Counterman v. Colorado*, 600 U.S. 66, 76 (2023) (*citing Brandenburg v. Ohio*, 395 U.S. 444, 449 (1969)) (the "mere advocacy" of illegal activity is "a kind of speech falling within the First Amendment's core.").

MVP's broad view of speech it believes evince liability for conspiracy is itself powerful evidence of the risk of a chilling effect to First Amendment associational freedoms posed by § 18.2-499, both on its face and in the context of this particular lawsuit. This "risk of a chilling effect on association is enough" to dismiss Count Six, "[b]ecause First Amendment freedoms need breathing space to survive." *See Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 618-19 (2021) (quoting *NAACP v. Button*, 371 U.S. 415, 433 (1963)); *see also* Memo in Support of Motion to Dismiss, pp. 12-13 (noting, without rebuttal from MVP, that § 18.2-499 authorizes suits for treble damages based on categories of speech for which punitive liability cannot be imposed consistent with the holding in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347-50 (1974)).

D. MVP CITES NO AUTHORITY IN THE CONTEXT OF § 18.2-499 OR SIMILAR STATUTES THAT WARRANTS UPHOLDING § 18.2-499 IN THE FACE OF THE VAGUENESS CHALLENGE HERE.

MVP's observation that § 18.2-499 has been applied in numerous reported cases is irrelevant to the vagueness analysis. *See*, *e.g.*, *Davis*, 588 U.S. at 465 (acknowledging the dissent's observation that the statute at issue had been used "in tens of thousands of federal prosecutions" while striking it down for vagueness). MVP cites no case upholding § 18.2-499 in the face of a vagueness challenge, either facial or as applied.

Contrary to MVP's suggestion, neither *Heard v. Rizzo*, 281 F. Supp. 720, 738-39 (E.D. Pa. 1968), *aff'd*, 392 U.S. 646 (1968) nor *Aikens*, 195 U.S. at 194 provides a good reason to reject Defendants' vagueness challenge here. In *Aikens*, where no vagueness challenge was at issue, the Court addressed Rev. St. Wis. 1898, § 4466a, a sister statute to § 18.2-499. *Id.* at 201 (addressing § 4466a which authorized criminal penalties against "any two or more persons who shall combine . . . for the purpose of willfully or maliciously injuring another in his reputation, trade, business, or profession, by any means whatever"). The Court "interpret[ed] 'maliciously injuring' to import doing a harm malevolently, for the sake of the harm as an end in itself, and not merely as means to some further end legitimately desired" and noted that an alternative interpretation would render the phrase "tautologous[.]" *Id.* at 203. Notably, the Court explicitly declined to consider whether the statute would be constitutional if it were interpreted to "extend[ ] to acts of which the motives were mixed," even if "done partly from disinterested malevolence and partly from a hope of gain." *Id.* at 206. In short, *Aikens* supports Defendants' vagueness challenge: it confirms that a reasonable person could read § 18.2-499 as applying *only* to "purely malevolent" action "for the sake of the harm as an end in itself, and not merely as means to some

further end legitimately desired" – a standard more restrictive than the legal malice standard adopted by the Virginia Supreme Court. *Id.* at 203-04.

*Heard*, in turn, cursorily addressed the constitutionality of a Pennsylvania law prohibiting two or more persons from "falsely and maliciously conspir[ing] and agree[ing] to * * * do any other dishonest, malicious, or unlawful act to the prejudice of another[.]" 281 F. Supp. at 738. While *Heard* ultimately upheld the statute at issue, at no point did the *Heard* court engage with the central inquiry required by *Davis*, *et al.*: whether persons of ordinary intelligence would have fair notice of the reach of the statute. *Id.* at 738-39; *see*, *e.g.*, *Davis*, 588 U.S. at 488 (statutes must "give ordinary people fair warning about what the law demands of them"). Puzzlingly, the *Heard* court cited the Supreme Court's definition of "maliciously injuring" in *Aikens* as a justification for upholding the statute, while simultaneously suggesting that Pennsylvania law defined "malicious" in a manner similar to the legal malice standard adopted by the Virginia Supreme Court. *Id.* at 739. This Pennsylvania district court opinion from 1968, which predates the robust modern vagueness doctrine, is unpersuasive.

* * *

Regardless whether this Court applies a heightened vagueness standard or believes a facial challenge appropriate, the plain language of § 18.2-499 does not clearly proscribe nonviolent acts of misdemeanor-level civil disobedience undertaken by ordinary people against a highly controversial fossil fuel development project. Such conduct, while illegal, is not clearly "malicious" under an everyday, common-sense understanding of the word. The statute is therefore unconstitutionally vague, at least as applied to the allegations against Mr. Glick and Ms. Califf set forth in MVP's Complaint, if not on its face. *Cf. Hasson*, 26 F. 4th at 610, 621 (4th Cir. 2022) (rejecting vagueness challenge when defendant, who was arrested with hundreds of

illicit opioids, Tramadol in his bloodstream, and fifteen firearms, did not contest that statute prohibiting possession of firearms by unlawful users of or addicts to any controlled substance clearly applied to him).

Again, civil disobedience has consequences. Regardless of the righteousness of their cause, Mr. Glick and Ms. Califf have faced and will continue to face those consequences. But persons of ordinary intelligence do not have fair notice that the conduct alleged here is proscribed by § 18.2-499. Count Six must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant the Defendants' Motion to Dismiss and dismiss the Complaint against them with prejudice as to Counts I, II, IV, and VI.

JOHN TED GLICK AND JANE CALIFF

By: /s/ Jonathan Sidney
Jonathan Sidney

Jonathan Sidney, *Pro Hac Vice*
Colorado Bar No. 52463
Ohio Bar No. 0100561
Climate Defense Project
P.O. Box 97
Forest Hill, WV
Email: jsidney@climatedefenseproject.org
Telephone: (510) 318-1549

Paul G. Beers (VSB # 26725)
Glenn, Feldmann, Darby & Goodlatte
111 Franklin Road, S.E., Suite 200
P. O. Box 2887
Roanoke, Virginia 24001-2887
Telephone: (540) 224-8000
Facsimile: (540) 224-8050
Email: pbeers@glennfeldmann.com

Counsel for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2024, I electronically filed the foregoing Defendants' Reply to Plaintiff's Memorandum in Opposition to Motion to Dismiss Counts One, Two, Four, and Six with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

/s/ Jonathan Sidney
Jonathan Sidney